I'd like to give a little bit of a factual background so we can understand how these He was solicited specifically by people who held themselves out as being specialists in underwriting high-end disability policies for surgeons in particular who had difficulty  is actually interesting but is that in the record somewhere that is in the record actually it's in it's in dr. Cohen's affidavit starting on page 339 okay dr. Cohen is solicited and dr. Cohen is referred to Peterson Peterson Peterson so that so that everybody is clear Peterson is what we call a cover holder for the underwriters the underwriters are actually in London and they are a group of people who signed off on what's called a facility we have heard nothing at all from these underwriters about their standards or their guidelines to underwrite any policy that was issued here we have we don't even have correspondence between any of the any Peterson and the underwriters all we have is correspondence between Peterson and the London broker is the only person to whom Peterson has a Peterson has contact this is really important when it gets to the issue of materiality because it's their job to prove that the underwriters would not have written this policy if if they had known certain facts well the underwriters have never spoken here we have Peterson who's literally three or four links up the chain because there are the underwriters in London at Lloyds there is the lead underwriter at Lloyds that's ARC 420 we then have Tysers who is the London broker then we get to Peterson then we get to Marler then we get to the doctor now this is this is critical because it's their obligation to prove that this policy would not have been written and the only thing they have in this case is evidence from Peterson to say he wouldn't have tried to get the underwriters to write the policy that's sort of really self-serving and there's no real evidence that he would have done that and he's not qualified as an expert in Lloyds custom and practice by the court below so how does he even know what they were doing the argument that's about the whether or not these were lies oh not you have a misrepresentation right I just I just it's only because I'm only talking about materiality at this particular moment because there's absolutely nothing from the underwriters my client told the truth through the entire process here at least the truth from his from his perspective based on his understanding of what the application was based on what the application was at the asking him that is in fact what Maryland law Maryland law says Maryland law says under the under the Pfeiffer case Continental versus Pfeiffer case and the Hendricks case and the Collier case that a person given the application reasonably interprets the questions and if that interpretation from their perspective is reasonable then they have not misrepresented and in this case clearly dr. Cohen did not misrepresent anything but this is it going back to the going back to the start of this he fills out the application first on April 1st 2011 it asks some general questions about his occupation he's a surgeon and a surgeon for 40 years he's been on the cutting edge for 40 years in terms of cancer in terms of cancer research and cancer surgery dr. Cohen dr. Cohen dr. Cohen gets this application and he fills it out and answers the questions correctly these are specialists in underwriting high-end disability policies for surgeons and what don't they ask they don't ask anything about his license they don't ask anything about whether he's got board action word action against him dr. Cohen has two licenses at all points in this in this case as a matter of fact he has one in Maryland one in DC his office is within walking distance of the District of Columbia he has privileges in both Maryland and DC or has had privileges at both Maryland and DC throughout his course of his practice dr. Cohen dr. Cohen is not asked although for 40 years he's been answering insurance applications especially for malpractice questions about his licensure there was no question ever directed to him from the underwriters who are holding themselves out or their agent their cover holder Peterson's holding themselves out as a specialist in underwriting doctors this makes no sense that it doesn't elicit any prompt to him to actually answer this question answer the question of oh yes by the way I have a small suspension I have a 90-day 90-day suspension in where we do not believe is admissible under any circumstance and I'll get to I'll get to that as well dr. Cohen then fills out the application on April 1st for the next four months Peterson's kicking the tires going back and forth with Tyser coming back to him asking for more financial data coming back to him asking for more medical data they never ask a single question about any of the four-page application despite the fact that he had written on top of one of the questions the one about financial stability and occupation that he was opening a DC office it didn't prompt a single question now dr. Cohen's finalized finalized his application on August 8th 2011 at that point the coverage is put into place in effect this cover all of the coverage in these policies has at least a 90-day elimination clause during this 90-day during the 90 days immediately after the beginning of the policy he cannot collect any benefits what he can collect he can suffer the injury and that's what this policy ensures against is the injury that would prevent you from doing from performing the act of surgery but you can't collect benefits until you've been disabled for at least nine days he is he is suspended in Maryland as as the board is aware on or about August 5th of 2011 he's automatically reinstated on November 5th 2011 during this time he has a license still valid license in the District of Columbia and still can do and still can do the other aspects of his practice as a as a surgeon as a doctor and he is in the office and he goes to the office that he's doing he's doing paperwork he's planning to move to which just happens to be what got him in trouble with the board in the first place the research which I understand is actually now standard of standard of care but he is he spent coming out of his office on September 8th 2011 trips and falls and suffers an injury that we've all agreed disables him and qualifies him for coverage under the policy there are he's not practicing medicine anymore he is disabled from this injury I understand that but is it disabling it's permanent it's permanent Dr. Cohen was 70 years old when he filled out the initial application he's now I think 74 he broke his hand and he can't I am NOT at all I played approach just let the record reflect I play basketball every Sunday with a guy who's 78 we are not 74 I'm nowhere near 74 but your honor your honor what happens here is what happens here is the underwriters have disclaimed coverage because of an order issued by the board orders by the board are absolutely not admissible in Maryland the statute 14410 health occupations 14410 is crystal clear on this issue unless there is an express stipulation and consent between the parties have you found a Maryland Attorney General's opinion or any Maryland case law on this or any case law on a similar statute in another state your honor what there what there is has been cited most the answer is no well the there are two cases in Maryland which address the which address the issue of the cocoa the cocoa versus Mara Medical Board and the and the unnamed physicians unnamed physicians versus unnamed physician versus Medical Board which talked about the precursor statute would say we cannot conceive of any way that this can be used in any in any civil action except when the physician themselves is suing the board we have the confluence in this statute that the order is public right but it can't be used in any litigate it's weird they go to a is it though if you read the statute together and you recognize that all the orders of the board are public that's 14 for 11 but there are many documents that are public that are not admissible 14 or 10 but it just seems it just there's there's I haven't found that in another state statute either that confluence well you know it no admissibility but public Maryland Maryland has Maryland has a unique legislature at times but it's it's live often when they institute legislation they look at some uniform and you know the mind of man only has a certain amount of imagination and we're always copying off of each other I I that I won't I won't pretend to understand what the legislature what the legislature meant to do except that they did change and tighten up the wording in 2013 so clearly the wording that goes back to 79 and the precursor statute the wording that was in place at the time of this event in the wording that comes into play in 2013 are absolutely clear not admit not admittable not admissible and this should not be admitted and the judge erred when she allowed it to be used and that is the gravamen of their and I'm correct it was attached to the complaint because we don't have a copy of the complaint in the J we have the amended complaint well the amended what but the first document we have is your motion not to admit it right but it was as I understand I went with the pacer and it is in the original complaint yeah the the amended complaint simply removed simply removed the underwriters active the underwriters contention that he was not disabled and they agreed that he was disabled okay but so the answer to my question is yes yes and the explanation is the only change is when you just talk yes yes okay with regard to with regard to the questions from my clients perspective he answered them he answered them truthfully he answered them truthfully there the questions were designed by just one more thing about this order it seems to me though that your client has admitted in pleadings all the facts that are contained all the bad facts if you will that are contained in the order well so is is it if it's error is that error harmless not at all your honor okay we as a matter of fact when we answered the complaint because there's a finding here is a matter of law there this isn't like this was influenced some fact finder right right we we objected from the very beginning in our answer to citing 14 410 saying that they're saying that this saying that this order was not a was not admissible and we had a continuing objection up until the point obviously where the judge denied our motion and lemonade in which case in which case we believe that was there that was error and the statute the order should never be admitted in evidence I understand that's your position I'm asking you whether that any error was harmless and I guess what you're saying is that your clients affidavit only followed or maybe you can tell me did it only follow the district the magistrate judge's determination that she was going to allow this that it came in in response to the motion for summary judgment yeah so it was later so it was much later thank you thank you thank you may it please the court and counsel I'm Neil Novak I believe in this matter I will start first with the question of the statute that we were just discussing and with respect to the district courts ruling granting the motion or denying the motion eliminate I'm going to stand on what I submitted in the brief for that for the purposes of explaining the district court's ruling what I do want to discuss though I think is the last point that was just raised by judge Mott's and the question of the other evidence in the record and we submit that that other evidence establishes both the fact of dr. Cohen suspension and the terms of the probation and that's all we really cared about that was the use of the consent order that we wanted to put it to for purposes of the found any authority that supports your view of what Maryland law is with respect to this order with respect with respect to the statute nothing I agree with mr. Frye I think all the cases and everything had have been have been cited well how do you get around then the ban on admissibility a couple of things the district court judge and I read the statute a little bit differently where it says if there is each other or no together differently from mr. Frye but that that if there's consent of the parties to a proceeding before the board which was the board and dr. Cohn then in a civil case you can use proceedings from the board you can use an order of the board then it would say that every because it's always well no no it's it that this is my second point on the question of your honors comment about other evidence in the record there is other evidence in the record attached to dr. Cohen's affidavit which was the affidavit wasn't purported until after they've been the ruling with respect to the Maryland statute correct that's correct but he attaches to his affidavit as exhibit a pages 346 7 8 another order of the board he didn't consent to this order but it was the order that was suspended only put it in after he lost the point no no he says he's he says he's preserving his objection throughout the whole thing so it doesn't make any difference if you make it once and it's rejected you know your trial or you go right along I mean either the district court may be wrong but that's the law of the cases it stands right there and you go up on appeal if you don't you offer all the evidence and all the arguments you do with the record as it is in front of you now you don't say well I'm just not I'm just going to withhold my evidence and I'm going to withhold my arguments because I think your initial ruling was the same order it was a different order that was not consented to by by dr. Cohen number one number two it had the same information in it that was in the consent order and and beyond that too we still have the request offered for the magistrate judge had made her ruling correct that's correct that's correct and then in addition to that we have the request for admissions where dr. Cohn did also admit that he did not advise Peterson International and was that done she made her ruling I I can't recall the exact time on that your honor those requests for admissions are in the record attached to our opposition to the motion to certify but I can't recall the precise date and when I'm when we submitted those but but but but those were the two that's what I meant to say that when they were executed so so I think that beyond I think that beyond the question of the just the strict reading of the statute I think the the district courts rationale and plus the fact of the other evidence in the record supports the conclusion that simply the fact of the of the suspension and the probation which was significant as well have already been established in multiple ways so we would urge the court to say you could affirm the district court on this you could find that the issue is moot because of the existence of other record of other evidence you could find dr. Cohn waived it because of the use of the other evidence in the record or you could find that that if you do think that there was an abuse of discretion which is the standard that applies here that it was simply harmless error because of the other evidence in the record but all of those points bring us to the same result and that is that the Petersons were unaware of the material facts when they were analyzing and underwriting these policies and mr. Peterson Thomas Peterson did testify at his deposition that the Petersons did perform the physical underwriting of this particular of these particular policies so I'll talk more about mr. Peterson in a minute but moving on to the summary judgment I think there's a fundamental question that needs to be asked about why we're here to begin with and that starts with the question of what was dr. Cohn purchasing and the easy answer is disability insurance but the second question and the important question is what protection does disability insurance provide and the answer to that is it provides protection from the interruption of one's earned income stream and that's key to understanding the materiality and the misrepresentation piece of it well although nobody seems to want to talk about policy I would have thought the policy language would be pretty important well we're going to well I'm not going to talk about the policy language because it's a rescission it's a rescission argument so we're going to be talking about the misrepresentation you have to talk about the misrepresentations to questions made in the policy oh and whether they're material or there is no case here right I was I was confused I think we're confusing application and policy and the and the application was in fact attached to the policy so yes your honor I'm going to get to that so the district court we submit correctly determined that the only type of insurable income is earned income and that was a Schreiber case we also presented a treatise Charles Soleil on the nature of the insurable interests in disability cases and so once we establish that disability insurance covers the fortuity against interruption from earned income you can then move on to the question of misrepresentations and you can see why they're material so turning to the misrepresentations there are two of them that we point to in the record the first one is question number one are you actively at work dr. Cohen answered yes to that question and the second question was beware of any fact that could change your occupation or financial stability and he answered no to that question so dr. Cohen justified the response to being at work by saying that during the terms of his suspension he was often home after midnight and we would submit that there's a difference between being at work and being at the if he's at work what's he doing what we know is what he told us on the application and I'm going to come back to that in a second the question point the second question about the financial stability he justified that by saying he had a good net worth which is irrelevant also in our view on the point it may be irrelevant but if these questions are ambiguous this right if they're so your honor and not on summary judgment I think the question of the ambiguity ambiguous questions and you still are entitled to summary judgment here your honor you have to take the whole context here if they were truly ambiguous I understand what you're saying but so ambiguous well if you let me move to the application itself the application has three parts to it has personal information it has financial information has medical information if you look at the first part of the application for the personal information they're blanks so the applicant has the opportunity to describe certain things what's your occupation what you are stating the two things were lies and you know let's talk about those two things well I'm I'm not I don't have to say he lied your honor I just have to say they were misrepresented let's talk about those two misrepresentation I'm I'm I'm trying to stay at work you're right there right right there there are three big you there are three there are three questions there are three questions that we're looking at on the top of the application your occupation your daily duties and your specialty he said surgeon surgery surgery it is in the context of what's provided up top that where there's the misrepresentation he's a surgeon let's go back to the question are you at work all right question right that's right he said yes that's right let me ask you a question your surgeon suppose he is there and for one month no one comes in for surgery is he still at work as a surgeon yes he is okay then so so it has nothing to do with whether or not you actually doing surgery and correct you can still be at work you agree with that yeah you're right I agree yes I agree I agree but the difference is the difference is his license was suspended he could not have performed a sir a surgery during the period of the suspension what was he did he was he licensed in the District Columbia he was but his license was you that there was also probation that but it's that exact moment when he signs this is he licensed in the district I understand he was but I don't I don't understand he had an office there I remember what he says in his deposition is that he was doing billing and he was all kinds of you know if you're in private practice that we would certainly count billing as work right your honor we have to come back to the question of earned income and his earned income stream was interrupted when he was suspended and that's what you look at for setting what the value is for the premium benefits so if you have a different cause or a different reason that interrupts why you can't make money as it turns out dr. Cohn had his three weeks after he was suspended he wasn't earning income at the time he says it was depositing checks and he was doing sorry which which of these two misrepresentations are you talking about now I'm talking about I'm talking about at work I haven't gotten it sounded like you were getting in the financial well the financial stability and the same thing I mean if you earned income stream is disrupted because it's suspended then your financial stability in the context of what can be insurable in a disability policy has been disrupted asked me about my financial stability let's leave aside the at work for a moment but it seems to me that financial stability is you're looking at are you financially stable I'm simple-minded as I am it doesn't necessarily mean that it's earned income it can be unearned income and unearned income is not insurable so so we don't we don't look at that does that does the policy say no on earned income counts no it doesn't say that now maybe you can get an expert to testify that everybody in the world knows that but that's not what the question is the question has to do with what his income was he submitted his tax returns his tax returns show earned and unearned but the opportunity to look at what is actually earned income is what the underwriters look at and they say are you financially stable they don't say what is your earned income or will your earned income continue no but it's what it's what they look at because that's what they look at and what they ask a different man right he's not supposed to read their mind he and and that brings to the duty to investigate I suppose is is one of the questions that we have here if we were supposed to ask further questions about dr. cones situation is that what your honor is getting out here I'm just getting it whether whether or not these questions are ambiguous it seems to me they're ambiguous you lose and so I'm trying to get you to tease out to me how they're not ambiguous and you say well all we're concerned about is earned income but it doesn't say that on the form your honor he is the architect of that application so he can put he can put anything he wants in that he could have said I'm a surgeon I teach I lecture I'm an author he could have done all that he was asked he was asked he was asked what his occupation was in the we said okay surgery his license to perform surgeries is suspended he is not at work performing surgeries the only conclusion you can draw a reasonable conclusion from the application is he was not actively at work performing surgeries when in fact he knew on the date that he submitted the application that he was going to be suspended and in fact on the date that he signed the final application August 8 2011 he was suspended and that was the date that the policy was issue issued he was suspended he did not have any earned income and that's the point of what the disability policy is supposed to cover so that's where the moral hazard issue comes into to the question and why there was a misrepresentation that was material the district court concluded that the answers were patently false and and in light of the totality of the circumstances as to what this type of insurance provides they were incorrect or false or misleading or misrepresentation whatever yes surgeons perform surgery but they also do surgery consults and they not earn income from that I mean that's if he said I'm at work I'm still consulting he's going to get paid for it that's going to be earned income I that's not in the record your honor and I don't know if I can answer that you know based on what we income are you talking from an IRS standpoint what the definition of earn income is I'm talking about what what what he what does if a surgeon performs three surgeries and has not been paid he has no earned income no I don't pay taxes on receivable I understand I understand well what are you talking you said earning income you says that ambiguous is a legal term on an IRS code your honor on a tax return they always look at the tax returns if he reports zero income don't get away from this or not right now is a definition under the code I used to be a tax lawyer you're asking you whether or not that is is it an earned income definition under the code because you don't pay taxes on receivables I understand that your honor you're correct but but again we're so in other words when he billed for it it was earned then so it wasn't I don't I don't know if he was a cruel and a cruel basis taxpayer and and these questions certainly don't go into that no they don't they don't at all but but the but the question is is if he doesn't get paid for doing work and he submits a tax return that shows he made a hundred dollars in one year he's not going to qualify for disability insurance at the level that he's asked back to what we are sadder the facts here it says are you financially stable or what to financial stability he says yes and he says that I'm billing billing for things and when I build them with it supposedly somebody pays their earned then I your distinction between earned income and unearned income really doesn't work I think the record does not reflect that your honor I think the record was that he was a not but we're here on summary judgment and maybe you're gonna win if this goes to try I understand your honor the what the district court looked at and what we were talking about was simply the basic notion of what a disability policy covers and he provided information that was that satisfied underwriters for purposes of issuing the policies they subsequently learned that that he was suspended and that goes to the core of what the disability policies were intended to be covering and that's why they said that was a misrepresentation you weren't actively at work performing surgeries that's what you told us you were doing I get your honors question that you certainly aren't every single minute of the day in a operating room performing surgeries or in a clinical setting performing excisional biopsies or whatever dr. Cohen was doing I understand that question was he could have been unless his license was suspended and that and it's that artificial interruption of the earned income stream that's at the core of the problem with whether there was a truthful accurate statement about are you actively at work when what he said was my work is beat is performing surgeries that's what he told I think you make a good argument but I think the jury could perhaps disagree I we we are here on summary judgment and and the the district court I think had the correct authority in the cases that that were cited with Essex and Fitzgerald summary judgment the hearings of the phone does she make a determination of the phone no there was no argument the the the oral argument was on the motion and lemonade that was telephonic there were not on the phone or otherwise for summary judgment there was not it was just on the briefs and and on the question of materiality of the court also noted that it can be determined as a matter of law and in the if the evidence is is clear I'm convincing in it and I'm contradictory I don't know if there are other I think I do want to Mr. Frey made some comments about Thomas Peterson he was not an insignificant player in the role here and Peterson International was not an insignificant entity here Mr. Peterson testified that he and the PIU team Peterson International underwriting team bound these policies did the physical underwriting there were transmissions to London back and forth the lead underwriter did see the materials those are in the record too you'll see some they call scratch on some emails or questions that were raised there were negotiations on the the the question of the DC office Mr. Frey says there were no questions at all there were questions 588 to 592 of the record show an exchange of emails between Mr. Marler who was dr. Cohn's agent and Peterson's trying to get his high limit disability income level up from $7,900 which is qualified for under his tax returns to he wanted 15,000 they went to 10 they went to 10,000 because of this thing about the at the DC office and that's in the record so so there were negotiations and there were exchanges and there was underwriting that was done in this case and it wasn't as if people just looked at an application said oh okay fine rubber stamp here let's go issue a policy there were significant exchanges and it was underwritten in the normal course of the way these matters happen but Peterson's has a 30-year experience with London in fact mr. Peterson's father was the original drafter of the policy that's evolved over the years underwriters respect them look to him for guidance and rely on him so they had a significant role in this it isn't as if there was no communication or contact with underwriters it was significant no no it's Peterson International underwriting and I know but in the olden yeah no it was always thought maybe that was yeah in California Harold Peterson so so the point is the the point is that mr. Peterson had significant involvement in this and said that this never would have gotten to the lead underwriter had he known about the suspension and had he known about the probation and so when they say no evidence that the insurers would not have issued policy there was it never would have gotten to the insurers to I see my light is on if there are no further questions thank you your honor is what mr. Peterson might or might not have done had he known had he known and asked questions that he should have asked is immaterial the question is what would have the underwriters done on the issue of materiality and there's no evidence of that this got through Peterson it got to the underwriters as the Hendricks case tells us and the Collier case tells us they and there the requirement then is for them to prove that arc 420 and all of the 17 other underwriters that are involved here had a guideline of some sort that said we don't issue policies to people who have a suspension a temporary suspension on one of their two surgery surgeons licenses they didn't do that and without that summary judgment should have actually been granted for the defendants in this case with regard to with regard to nearly every aspect that mr. Peterson raised mr. page who was qualified expert in the standards and practice of Lloyd's disputes disputes that and certainly at least a jury question is it is let me they haven't asked for a jury trial right but I find her a fact trial okay I thought you said jury just like did say jury question because the other thing is the statute standard standard is to know about review that's the Clark versus absolute case that you all just ruled on about a year ago if there's no other questions and I'll sit down thank you very much we will ask our clerk to adjourn court and then we'll come down and greet
judges: Diana Gribbon Motz, Roger L. Gregory, Mary G. Lewis